IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JERRELL PRICE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:12-mc-00053 |
| | ) |
| STATE OF TENNESSEE, *et al.*, | ) Judge Campbell |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Plaintiff Jerrell Price, a pretrial detainee confined at the Montgomery County Jail in Clarksville, Tennessee, has filed a *pro se* complaint under 42 U.S.C. § 1983 (ECF No. 1), alleging that he was unlawfully arrested and falsely imprisoned. Because he proceeds *in forma pauperis* against government officials, the complaint is before the Court for initial review pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a), and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *reversed on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

I.  **FACTUAL ALLEGATIONS**

The plaintiff names as defendants the State of Tennessee, Montgomery County, City of Clarksville Police, Montgomery County Sheriff, Officer John V. Daniel, Officer Jeffrey A. Morlock, District Attorney General John Carney, District Public Defender Roger E. Nell, and Assistant Public Defender Charles S. Bloodworth. He alleges that the "State, County and/or City" issued a warrant for his arrest and had him arrested at his home in Salina, Kansas in November 2011, and proceeded to have him extradited to Tennessee based on charges that he had failed to comply with Tennessee's sexual-offender registry law. The copy of the True Bill attached to the complaint shows that the plaintiff was charged on March 5, 2012 with being a previously convicted sexual offender or violent sexual offender who knowingly failed to timely report a change of address as required by Tenn. Code Ann. § 40-39-203, in violation of Tenn. Code Ann. § 40-39-208(a)(3). (ECF No. 1, at 3.)

The plaintiff asserts that arresting officials were provided with copies of documents showing that he had registered in Kansas in accordance with state and federal law, but the State of Tennessee has continued

to hold him in custody on a $25,000 bond. The plaintiff claims that he rejected the State's settlement offer, which would have required him to plead guilty. The plaintiff claims he demanded a jury trial, but has been told by the assistant public defender appointed to represent him that the plaintiff's "witness would not support his alibi and he would not get a [jury] trial." (ECF No. 1, at 2.)

The plaintiff insists that the defendants have engaged in conspiracy, obstruction of justice, and false imprisonment. He seeks dismissal of the charges against him as well as compensatory and punitive damages.

## II.     STANDARD OF REVIEW

Under 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss any portion of a civil complaint filed *in forma pauperis* that (1) fails to state a claim upon which relief can be granted, or (2) is frivolous. The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under [§ 1915(e)(2)(B)] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

Although *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with *pro se* complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

## III.    ANALYSIS AND DISCUSSION

To state a claim under § 1983, a plaintiff must "identify a right secured by the United States

Constitution and deprivation of that right by a person acting under color of state law." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992); *West v. Atkins*, 487 U.S. 42, 48 (1988). Claims against entities or individuals who are not state actors and "persons" subject to suit under § 1983 must be dismissed. Claims that do not state a deprivation of a right secured by the Constitution or federal law must likewise be dismissed.

### A. The State Is Entitled to Immunity.

The plaintiff's claims against the State of Tennessee are subject to dismissal because the state is not a suable entity under § 1983 and in any event is immune from suit pursuant to the Eleventh Amendment. *Quern v. Jordan*, 440 U.S. 332, 340–45 (1979). The sovereign immunity protected by the Eleventh Amendment extends to claims for injunctive relief and other forms of equitable relief. *See Lawson v. Shelby Cnty., Tenn.*, 211 F.3d 331, 335 (6th Cir. 2000) ("[T]he [Eleventh] Amendment prohibits suits against a 'state' in federal court whether for injunctive, declaratory or monetary relief."). The only exceptions to a State's immunity are (1) if the State has consented to suit or (2) if Congress has properly abrogated a State's immunity. *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008). Neither of these exceptions applies to § 1983 suits against the State of Tennessee. *See Berndt v. Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986) (noting that Tennessee has not waived immunity to suits under § 1983); *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (reaffirming that Congress did not abrogate states' immunity when it passed § 1983).

### B. The State Prosecutor Is Entitled to Prosecutorial Immunity.

The claims against District Attorney General John Carney are barred under common-law principles of absolute prosecutorial immunity insofar as the acts for which the attorney is sued fall within the scope of his prosecutorial duties. *See Imbler v. Pachtman*, 424 U.S. 409, 427 (1976) (holding that prosecutorial immunity encompasses immunity from § 1983 claims). Moreover, such immunity applies even where the plaintiff alleges that the prosecutor has acted with malice or dishonesty, *id.* at 427, or that the prosecutor knowingly presented false testimony at trial, *id.* at 431 n.34. Prosecutors also have absolute immunity for appearances at probable cause and grand jury hearings; evaluation of evidence and presentation of that evidence at pre-trial and trial proceedings; and preparation of witnesses for trial. *Spurlock v. Thompson*, 330 F.3d 791, 797 (6th Cir. 2003). The only exception to absolute immunity is that "when a prosecutor 'functions

as an administrator rather than as an officer of the court' he is entitled only to qualified immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) (quoting *Imbler*, 424 U.S. at 431 n.33).

In this case, the plaintiff does not allege that defendant Carney took any specific action that would fall outside the scope of his prosecutorial duties. To the extent that the plaintiff alleges that Carney was involved in a "conspiracy" to deprive the plaintiff of his rights, the Court notes that such allegations are grounded in speculation rather than actual fact, and are not pleaded with sufficient specificity to state a claim upon which relief may be granted. Because Carney's actions all fall within the scope of his prosecutorial duties, this defendant is immune from the § 1983 claims against him. The plaintiff's claims against Carney are therefore subject to dismissal.

### C. The Claims against the Public Defender and Assistant Public Defender

The claims against the Montgomery County Public Defender and the Assistant Public Defender who represented (and perhaps continues to represent) the plaintiff in underlying criminal proceedings, fail because a public defender, in his role as criminal defense counsel, is not a person acting under color of state law who is subject to suit under § 1983. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."). The plaintiff alleges liability on the part of Charles Bloodworth only in connection with Mr. Bloodworth's activities as the plaintiff's appointed criminal defense counsel, so the exceptions the Supreme Court and the Sixth Circuit have recognized under which a public defender may be sued under § 1983 do not apply. *Cf. Powers v. Hamilton Cnty. Public Defender Comm'n*, 501 F.3d 592, 612 (6th Cir. 2007) (holding public defender and public defender's office were subject to liability under § 1983 where the allegations supported a finding that the challenged action was administrative in nature and also was alleged to be an unconstitutional policy or custom), *cert. denied*, 555 U.S. 813 (2008). The claims against District Public Defender Roger E. Nell in his individual capacity fail because the plaintiff has not alleged that Nell took any action that might give rise to the plaintiff's claims.

To the extent District Public Defender Roger E. Nell or Assistant Public Defender Bloodworth is sued in his official capacity, those claims also fail. If these defendants are deemed state officials for purposes of an official-capacity suit, the claims fail because they are barred under the Eleventh Amendment. If these

defendants are not deemed state officials, the claims still fail because the plaintiff has not alleged that they acted pursuant to a custom or policy for which the employer, the Public Defender's Office, could be liable. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (explaining that "official capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent" and that "because the real party in interest in an official-capacity suit . . . is the governmental entity and not the named official, the entity's policy or custom must have played a part in the violation of federal law" (internal quotation marks and citations omitted)). The plaintiff therefore fails to state an official-capacity claim against defendants Nell or Bloodworth.

**D.     The Claims against Montgomery County and the Clarksville Police Department**

Although a municipality, such as Montgomery County, may be a "person" for purposes of § 1983, the law is clear that "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior*[1] theory." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). Rather, "the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for the deprivation of rights protected by the Constitution." *Monell*, 436 U.S. at 690. "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479–80 (1986)).

Thus, a municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Doe v. Claiborne Cnty.*, 103 F.3d 495, 508 (6th Cir.1996). In short, the plaintiff must "identify the policy, connect the policy to the [county] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (internal quotation marks and citations omitted). The policy or custom "must be 'the moving force of the constitutional violation'

---

[1] "Respondeat superior" is "the doctrine under which liability is imposed upon an employer for the acts of his employees committed in the course and scope of their employment." Ballentine's Law Dictionary (3d ed.1969).

in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)); *see also Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (indicating that the plaintiff must demonstrate "deliberate conduct" on the part of the municipality).

In the present complaint, the plaintiff does not remotely allege the existence of any type of official Montgomery County policy that led to the injuries allegedly suffered by the plaintiff, or even that the county was aware of the actions taken by the individual police officers. Because the plaintiff has not alleged the existence of a county-wide policy that gave rise to his injuries, the § 1983 claims against Montgomery County are subject to dismissal.

As for the claims against the Clarksville Police Department, the law is clear that a police department is not an entity that may be sued under § 1983. *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994); *see also Mathes v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:10–cv–0496, 2010 WL 3341889, at *2, *3 (M.D. Tenn. Aug.25, 2010) (noting that "since Matthews, federal district courts in Tennessee have frequently and uniformly held that police departments and sheriff's departments are not proper parties to a § 1983 suit" under Tennessee law, and therefore granting the motion to dismiss the § 1983 claim against the Davidson County Sheriff's Office). The § 1983 claims against the Clarksville Police Department are therefore subject to dismissal for failure to state a claim upon which relief may be granted. Even if the claims against the police department were deemed to be stated against the City of Clarksville itself, the plaintiff again has not shown the existence of a policy or custom adopted by the City that gave rise to his injuries.

### E. The Claims against Individual Police Officers

Finally, the plaintiff also names the Montgomery County Sheriff and two individual police officers, John V. Daniel and Jeffrey A. Morlock. These persons, acting in their individual capacity, are "persons" acting under color of state law who may be sued under § 1983. Broadly construed, the complaint alleges that the plaintiff was falsely arrested and falsely imprisoned by the police officers and/or the Sheriff, that is, that he was arrested and detained without probable cause, and that the defendants knew or should have known that he was not guilty of the crime charged.

Claims of false arrest and false imprisonment under § 1983 overlap, with false arrest being a species

of false imprisonment.  *Wallace v. Kato*, 549 U.S. 384, 388 (2007).  A false arrest claim requires a plaintiff to show that the underlying arrest lacked probable cause.  *See, e.g.*, *Brooks v. Rothe*, 577 F.3d 701, 706 (6th Cir. 2009) (for a wrongful arrest claim to succeed under § 1983, plaintiff must prove that police lacked probable cause); *Gumble v. Waterford Twp.*, 171 F. App'x 502, 507 (6th Cir. 2006) (quoting *Mark v. Furay*, 769 F.2d 1266, 1269 (7th Cir. 1985) ("[T]he existence of probable cause for an arrest totally precludes any section 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution, regardless of whether the defendants had malicious motives for arresting the plaintiff."); *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988) ( "[A]rrest without a warrant does not violate the Fourth Amendment if probable cause exists for the arresting officer's belief that a suspect has violated or is violating the law.").

Generally, probable cause exists when the police have "reasonably trustworthy information . . . sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense."  *Beck v. Ohio*, 379 U.S. 89, 91 (1964).  "Probable cause determinations involve an examination of all facts and circumstances within an officer's knowledge at the time of an arrest."  *Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999).  "In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible."  *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995).  Sixth Circuit precedent suggests that, in the context of a warrantless arrest, a police officer may be under some duty to make a reasonable investigation in determining whether adequate probable cause exists for an arrest.  *See Gardenhire v. Schubert*, 205 F.3d 303, 328 (6th Cir. 2000) ("An allegation by one individual that items in another's possession actually belong to her is not enough to create probable cause that a crime has been committed.").

Where an arrest is made pursuant to a grand jury indictment, "the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer."  *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 307 n.13 (6th Cir. 2005) (citing *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002)).  However, "after-the-fact grand jury involvement cannot serve to validate a prior arrest."  *Id.* (citing *Garmon v. Lumpkin Cnty.*, 878 F.2d 1406, 1409 (11th Cir. 1989) ("A subsequent indictment does not retroactively provide probable cause for an arrest that has already taken place.")).

Under these principles, the Court finds that the plaintiff has, at least for purposes of the initial screening, stated colorable claims against the Montgomery County Sheriff, Officer John V. Daniel, and Officer Jeffrey A. Morlock for false imprisonment/false arrest. A copy of the indictment is attached to his complaint, but it appears that it was issued after the plaintiff had already been arrested. If the plaintiff's version of the facts is proven to be true, a reasonable factfinder could conclude that the arrest was not supported by probable cause, and that no reasonably competent police officer would have found probable cause. *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

The Court cautions the plaintiff that this is a preliminary finding only. The Court finds merely that the complaint states a claim for false imprisonment/false arrest against the police officers.

### IV. CONCLUSION

The complaint fails to state claims under § 1983 for which relief may be granted against the State of Tennessee, Montgomery County, the City of Clarksville Police, District Attorney General John Carney, District Public Defender Roger E. Nell, and Assistant Public Defender Charles S. Bloodworth. The claims against those defendants will therefore be dismissed. The Court finds, however, that the complaint states colorable claims for false arrest/false imprisonment against the Montgomery County Sheriff, Officer John V. Daniel, and Officer Jeffrey A. Morlock. Those claims will be permitted to proceed.

An appropriate order will enter.

_Todd Campbell_
Todd Campbell
United States District Judge